UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

VIVIAN SANKS KING et al.,

                Plaintiffs,

vs.                                                Case No.  3:06-cv-61-J-33TEM

DAVID SHOAR et al.,

                Defendants.

_____/

## ORDER

This cause comes before the Court pursuant to Defendant David Shoar's, as the Sheriff of

St. Johns County, Motion for Summary Final Judgment (Doc. #55) filed on June 27, 2007.  Plaintiffs

filed their Response (Doc. #64) on July 12, 2007.  For the reasons stated below, the motion is

granted in part and denied in part.

## I.   STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(c).  A factual dispute alone is not enough to defeat a properly pled motion for summary

judgment; only the existence of a genuine issue of material fact will preclude grant of summary

judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  An issue is genuine if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v.

Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun

Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)).  A fact is material if it may affect the outcome of the

suit under the governing law.  Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).  The

moving party bears the initial burden of showing the court, by reference to materials on file, that

there are no genuine issues of material fact that should be decided at trial.  Hickson Corp. v. N.

Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317,

323 (1986)).

"When a moving party has discharged its burden, the non-moving party must then 'go

beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and

admissions on file,' designate specific facts showing that there is a genuine issue for trial."  Jeffery

v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence

is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor.

Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003).  If a reasonable fact finder

evaluating the evidence could draw more than one inference from the facts, and if that inference

introduces a genuine issue of material fact, the court should not grant summary judgment.  Samples

ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron &

Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)).

## II.    BACKGROUND

In the late hours of December 9, 2003, Lewis King was driving in St. Augustine, Florida.

(Doc. #53 at1-2.)  Deputy Michaux observed King driving with an alleged broken brake light, and

he pulled King over to conduct a traffic stop. (Doc. #53 at 3.)  Michaux walked up to King's vehicle

to conduct an "at-window" interview. (Id.)  Deputy McKenzie pulled over to observe the traffic stop

for officer safety, and he approached King's car on foot from the passenger side to do so.  (Id.)

Deputy Zufelt heard Michaux announce the stop over the radio, and he also arrived at the scene to observe. (Id.) King gave his documents and registration to Michaux, who then returned to his vehicle and also noticed Zufelt's arrival. (Id.) While Michaux was at his own vehicle, McKenzie, who was watching King from the passenger window, observed King reach into his pants, remove a pill bottle, and place it in his jacket. (Id.) When McKenzie asked King about the item, King denied its existence. (Id. at 3-4.) McKenzie reached in through the vehicle window and pointed at the pill bottle and said "that pill bottle." (Id. at 4.)

After this exchange, King engaged the transmission and drove away. (Id.) McKenzie, who still had his arm through the car window, was knocked off balance and instinctively grabbed hold of the car. (Id.) Deputy Zufelt heard a yell and immediately followed King's car. (Id.) Michaux followed in his own car after Zufelt departed. (Id.) King drove with McKenzie hanging onto the car, and when King made a slow left-hand turn, McKenzie was able to push off the car. (Id.) King continued to drive for a few miles, with Zufelt and Michaux in pursuit. (Id. at 4-5.) Eventually King crashed his car into a wooded area, and he then exited his car and ran into the woods. (Id. at 5.) Michaux, who was a canine officer, ordered his K-9 into the woods, but the dog entered King's abandoned vehicle. (Id.) Michaux, uncertain of Zufelt's whereabouts, retrieved his dog. (Id.) Zufelt arrived and gave several commands for King to exit the woods. (Id.) Eventually, King exited the woods and approached the officers. (Id.)

The events that happened thereafter are in dispute. Defendants maintain that Zufelt used his taser on King to subdue him, after King would not comply with orders to get on the ground. (Id.) Zufelt deployed his taser several times, but the sound it made indicated to Zufelt that is was not working properly, so he exchanged the cartridges and deployed it again. (Id.) Plaintiffs allege that

Zufelt did not deploy his taser until after King was already handcuffed and subdued.  (Doc. #59 at

4.)  In any event, King was eventually handcuffed and restrained.  Thereafter, Michaux requested

dispatch send a rescue to respond and check on King, due to the traffic crash and the taser.  (Doc.

#59-23 at 2.)  Shortly after rescue arrived, King went into cardiac arrest.  (Id.)  He was transported

to Flagler Hospital, but efforts at resuscitation were unsuccessful, and King was pronounced dead.

(Doc. #55-14 at 3.)  Plaintiffs brought this suit against Shoar, alleging various state law and federal

claims, including violations under 42 U.S.C. § 1983.

### III.    ANALYSIS

#### A.    Count I - Negligent Wrongful Death

Plaintiffs bring a claim under the Florida Wrongful Death Act, alleging that the Deputies'

negligence led to King's death, and thus Shoar, as Sheriff of St. Johns County, is vicariously liable.

Shoar asserts that Plaintiffs' claim is barred by section 776.085, Florida Statutes, which precludes

a personal injury claimant from pursuing his case if the injury was "sustained by [the individual]

during the commission or attempted commission of a forcible felony."  Fla. Stat. § 776.085 (2007).

Shoar claims that King committed battery on a law enforcement officer and aggravated fleeing at

the time of the incident.  (Doc. #55 at 20.)  Plaintiffs respond that even if King did commit a felony,

he had already peaceably surrendered at the time excessive force was used on him.

While the commission of a forcible felony is a bar to a wrongful death action, the injury must

be sustained *during* the commission or attempted commission of that crime.  Fla. Stat. § 776.085.

Thus, an injury sustained after the forcible felony was completed would not support this defense.

Cf. Copeland v. Albertson's Inc., 947 So. 2d 664, 667 (Fla. 2d DCA 2007) (finding that section

776.085 was inapplicable to injuries sustained *after* commission of aggravated assault).  The

evidence presented to the Court shows no question that Deputy Zufelt used his taser on King after the alleged forcible felony occurred.  Since this personal injury did not occur *during* the alleged commission of a forcible felony, the Court finds that section 776.085 is not a bar to Plaintiffs action at this time.

### B.        Count III - Negligent Hiring, Training, Supervision, and Retention

In Count III, Plaintiffs allege that Shoar negligently hired, trained, supervised, and retained Deputies Michaux and Zufelt.[1]  Plaintiffs have now waived their claim of negligent hiring.  (Doc. #64 at 22 n.6.)  Plaintiffs allege that the training the Deputies received on proper use of the taser was deficient, and that Shoar negligently supervised and retained the Deputies.

On the ground of negligent training, Shoar asserts that sovereign immunity shields him from this claim.  Florida law waives sovereign immunity for acts that would create liability in a private person.  Fla. Stat. § 768.28.  But this waiver only extends to a government entity's "operational" acts, and not discretionary acts.  Mercado v. City of Orlando, 407 F.3d 1152, 1162 (11th Cir. 2005) (citing Lewis v. City of St. Petersburg, 206 F.3d 1260, 1262 (11th Cir. 2001).  Thus, to state a claim of negligent training, a plaintiff may not "merely challenge the content of the program."  Id. at 1162.  "The determination of the content of a training program is a discretionary function . . . which is afforded sovereign immunity."  Id.  To state a claim for negligent training, a plaintiff must show the government entity was negligent in the implementation of the training program.  Id.  Plaintiffs do not challenge the content of the taser training program.  Their claim is that the "training was directly contrary to the Taser training materials."  (Doc. #64 at 23.)  On consideration of the evidence

---

[1] Deputy McKenzie has been dismissed from this case.  (Doc. #66 at 10.)

presented, the Court finds that there is an issue of material fact as to whether the training was implemented correctly.

Florida law also recognizes a tort for negligent retention or supervision.  An "employer cannot knowingly keep 'a dangerous servant on the premises which defendant knew or should have known was dangerous and incompetent[.]'" Mercado, 407 F.3d at 1162 (quoting Mallory v. O'Neil, 69 So. 2d 313, 315 (Fla. 1954).  To prevail on a claim of negligent retention or supervision, a plaintiff must show that the government entity was on notice of the employee's harmful tendencies. Id. at 1162.  Plaintiffs have presented evidence that several complaints of excessive force were filed against Deputy Zufelt, and Deputy Michaux violated departmental policy by conducting an improper arrest.  (Doc. #64 at 24.)  As such, the Court finds that there is a genuine issue of fact as to whether Shoar knowingly employed a "dangerous servant."  Therefore, summary judgment is not proper on this count.

### C.    Counts IV, V, VI, VII - § 1983 Claims

The Court has previously determined that Counts IV, V, VI, and VII were brought against Defendants Richard Michaux and David Zufelt in their personal capacity, not in their official capacity.  (Doc. #66.)  As such, Shoar is not a party to these claims, and the Court will not address them.

### D.    Count VIII - Eight Amendment Claim

The Eighth Amendment prohibits "cruel and unusual punishments."  U.S. Const. amend. VIII.  While the Eighth Amendment does prohibit the use of excessive force, it applies only to incarcerated persons.  See Graham, 490 U.S. at 392-94 ; Hamm v. DeKalb County, 774 F.2d 1567, 1572 (11th Cir. 1985) (holding Eighth Amendment only applies after a person is convicted of a

crime).  An "excessive force claim [that] arises in the context of an arrest or investigatory stop . . . is most properly characterized as one invoking the protections of the Fourth Amendment." Graham, 490 U.S. at 394; see also Brosseau v. Haugen, 543 U.S. 194, 197 (2004).  Plaintiffs' assertion of a claim under the Eighth Amendment is incorrect as a matter of law.  Judgment will be entered in favor of Shoar on Count VIII.

### E.    Count IX - Failure to Train

Count IX alleges a § 1983 claim for Shoar's failure to adequately instruct,  train, supervise and control the Deputies.  A municipality cannot be subject to § 1983 liability merely through vicariously liability.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  A municipality is only liable for constitutional deprivations that are effected through an official policy or custom.  Id.; Anderson v. Atlanta, 778 F.2d 678, 685 (11th Cir. 1985).  A plaintiff must show that "the policy was the moving force of the constitutional violation."  Vineyard v. County of Murray, 909 F.2d 1207, 1213 (11th Cir. 1993).  Defendants argue that this one incident is not sufficient to show an unconstitutional policy.   A single constitutional violation may create § 1983 liability "if there is sufficient independent proof that the moving force of the violation was a municipal policy or custom."  Gilmere v. City of Atlanta, 447 F.2d 1495, 1504 n.10 (11th Cir. 1985).  Plaintiffs have alleged that the St. Johns County Sheriff's training policies condoned the use of a taser when a suspect was passively resisting, which Plaintiffs assert to be unconstitutional.  In light of this evidence, the Court finds that there is an issue of fact as to whether Shoar's policies where the moving force behind the Deputies alleged violations.  Therefore, summary judgment on Count IX is denied.

**E.      Count X - Municipal Violations**

Plaintiffs have waived this claim and voluntarily dismiss Count X.  (Doc. #64 at 20.)

Therefore, Count X is dismissed.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant David Shoar's Motion for Summary Judgment (Doc. #55) is **GRANTED IN**

**PART** and **DENIED IN PART**:

   a)      As to Count I, summary judgment is **DENIED**;

   b)      As to Count III, summary judgment is **DENIED;**

   c)      As to Count VIII, summary judgement is **GRANTED**;

   d)      As to Count IX, summary judgment is **DENIED**;

   e)      Count X is **DISMISSED**.

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this <u>17th</u> day of July, 2007.


_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE



Copies:
All Counsel of Record